**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on January 28, 2016, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: January 28, 2016**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 13-14494 |
| | ) | |
| LUANN MITCHELL, | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | Adversary Proceeding |
| | ) | No. 15-1006 |
| LUANN MITCHELL, | ) | |
| Plaintiff, | ) | |
| | ) | Judge Arthur I. Harris |
| v. | ) | |
| | ) | |
| WILFRED LOUIS ANDERSON, | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

This adversary proceeding involves a *pro se* debtor, whose Ohio law license has been suspended, and a *pro se* creditor, whose Ohio medical license has been revoked.  Luann Mitchell, the *pro se* debtor, seeks damages against Wilfred

---

[1]  This Memorandum of Opinion is not intended for official publication.

Anderson, the *pro se* creditor, for prosecuting multiple lawsuits against her in state courts in violation of the automatic stay and the discharge injunction entered in her bankruptcy case.  The Court conducted a trial in this case on October 28, 2015, and gave the debtor until November 30, 2015, to file additional documentation in support of her claim for damages.  For the reasons that follow, the Court finds that Anderson willfully violated the automatic stay but did not knowingly violate the discharge injunction.  The Court declines to award damages beyond the $1,137.50 already awarded the debtor in state court for the same conduct, other than $72 in costs incurred in the prosecution of the automatic stay portion of this adversary proceeding.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. §§ 157(a) and 1334 and Local General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

This adversary proceeding is the latest in a series of proceedings and contested matters arising under the debtor's main bankruptcy case.  It is also one of many proceedings, most of which have been litigated in state courts, between

2

the debtor and Anderson. To provide context, the Court will briefly describe the other adversary proceedings and contested matter arising under the debtor's bankruptcy case, none of which directly involve the longstanding dispute between the debtor and Anderson.

*A. Other Adversary Proceedings and Contested*
*Matters in the Debtor's Bankruptcy Case*

*1. Debtor's Homestead Exemption and Motion to Avoid Judicial Liens*

On July 26, 2013, Mitchell commenced her first adversary proceeding seeking a determination that she had a valid homestead exemption. (Adv. Proc. No. 13-1180). On November 18, 2013, attorney James MacDonald entered an appearance on the debtor's behalf and, two days later, voluntary dismissed Adv. Proc. No. 13-1180. The issue of whether the debtor had a valid homestead exemption and could avoid judicial liens that impaired her homestead exemption was instead litigated as a contested matter within the debtor's main bankruptcy case. On April 30, 2014, the Court determined that the debtor could avoid the judicial liens, even though the debtor had previously made sworn statements disavowing her ownership of the property she now claimed as her homestead, presumably to delay foreclosure efforts. Although the Court noted that "[t]he debtor's behavior may reflect negatively on her overall honesty and credibility,"

3

the Court found that, under *Law v. Siegel*, ___ U.S. ___, 134 S. Ct. 1188 (2014), the debtor's prior conduct did not prevent her from amending her claim of exemption. (Docket No. 84 in Case No. 13-14494).

### 2. *Dischargeability of Two State Court Judgments*

On September 30, 2013, the creditor Western Reserve Area Agency on Agency, which held judgment liens against the debtor, filed an adversary proceeding to determine that its judgments were nondischargeable under 11 U.S.C. § 523. (Adv. Proc. No. 13-1222). On November 21, 2014, the Court granted in part the creditor's motion for summary judgment, holding nondischargeable a 2006 state probate court judgment assessing sanctions of $32,154.79 in attorney's fees and expenses against the debtor. The Court held that a separate sanctions judgment entered against the debtor by the Ohio Court of Appeals was dischargeable. (Docket No. 47 in Adv. Proc. No. 13-1222).

### 3. *Dischargeability of Costs Associated with State Court Disciplinary Proceedings*

On September 30, 2013, the debtor commenced an adversary proceeding against the Supreme Court of Ohio seeking a determination that the costs associated with disciplinary proceedings against her were dischargeable. (Adv. Proc. No. 13-1227). On November 18, 2013, attorney MacDonald entered an

4

appearance on behalf of the debtor and filed an amended complaint. The Court

heard the matter based on joint stipulations of fact. On March 17, 2014, the Court

held that the costs assessed against the debtor by the Ohio Supreme Court in 2008

were nondischargeable. (Docket No. 16 in Adv. Proc. No. 13-1227) . On

April 6, 2015, U.S. District Judge Christopher A. Boyko affirmed the decision of

this Court. *Mitchell v. Supreme Court of Ohio*, No. 1:14CV924,

2015 WL 1530626 (N.D. Ohio Apr. 6, 2015).

### B. The Current Adversary Proceeding (No. 15-1006)

On January 12, 2015, the debtor filed the current adversary proceeding

against Wilfred Anderson seeking damages and attorney's fees under 11 U.S.C.

§ 362(k) for alleged violations of the automatic stay. Although the *pro se*

complaint does not specifically address violations of the discharge injunction, the

Court has construed the complaint as also seeking to recover under a civil

contempt theory for violations of the discharge injunction. *See Pertuso v. Ford*,

233 F.3d 417 (6th Cir. 2000); *Badovick v. Greenspan (In re Greenspan)*,

No. 10-8019, 2011 WL 310703 (B.A.P. 6th Cir. Feb. 2, 2011) (unpublished table

decision).

This adversary proceeding is but one part of the debtor's efforts to end "a

long-standing, acrimonious dispute" with Anderson. *Anderson v. Mitchell*, No.

5

1:14 CV 276, 2014 WL 3749316, *1 (N.D. Ohio July 29, 2014).  Since 2010,

Anderson has repeatedly and unsuccessfully alleged – before law enforcement

agencies, prosecutors' offices, and courts – that the debtor stole the cremated

remains of a deceased woman whom Anderson claims was his wife.  *See id.*;

*Anderson v. Mitchell*, 8th Dist. Cuyahoga No. 99876, 2014-Ohio-1058.

On March 18, 2015, Anderson answered the complaint by claiming that:

(1) the debtor did not list him as a creditor until January 7, 2015; (2) the debtor has

been inconsistent regarding the ownership of property that she listed as exempt in

her bankruptcy; (3) the debtor failed to advise state courts of her bankruptcy case

in a timely manner because she wanted to pursue counterclaims in certain cases;

(4) the debtor omitted her state court counterclaims against him from her

bankruptcy schedules; (5) the debtor failed to report income in her bankruptcy

case; and (6) omissions in the debtor's bankruptcy petition and schedules

constituted "deceit, fraud, and perjury."

On August 14, 2015, the Court issued an amended briefing and scheduling

order which scheduled trial for October 28, 2015, and outlined special trial

procedures to avoid contravening an existing state court protection order

prohibiting direct contact between Anderson and the debtor (Docket No. 47).  The

Court arranged for Anderson and the debtor to appear from separate, remote

6

locations, with live three-way video between the courtroom and the two remote locations. *See* Fed. R. Bankr. P. 9017; Fed. R. Civ. P. 43; *Parkhurst v. Belt*, 567 F.3d 995, 1002 (8th Cir. 2009) (affirming trial court's use of contemporaneous transmission in civil case under Civil Rule 43). The Court sent a copy of the trial order to the state court judge who issued the protection order to ensure that the procedure did not contravene the existing protection order and gave both Anderson and the debtor ample time to seek modification of the protection order if either party was concerned that the trial procedures would contravene the protection order.

On October 28, 2015, Anderson declined to attend the trial and instead asked that the Court take judicial notice of the state court protection order (Docket No. 102). The Court denied Anderson's motion because specific procedures had already been arranged to ensure that the trial did not contravene the state court protection order and Anderson had more than two months to seek clarification or modification of the protection order from the state court (Docket No. 103). Furthermore, the confrontation clause of the Sixth Amendment does not apply to civil or bankruptcy cases. *See Hannah v. Larche*, 363 U.S. 420, 440 n. 16 (1960) ("[The Sixth Amendment] is specifically limited to 'criminal prosecutions.' "); *Denh Nhiet Chu v. Lara (In re Denh Nhiet Chu)*, Adv. No. 06-01031,

7

2008 WL 8444805, *10-11 (B.A.P. 9th Cir. Mar. 18, 2008) (adversary proceeding brought under 11 U.S.C. § 523(a)(9) is a civil proceeding and the Confrontation Clause applies only to criminal cases). Had he chosen to appear, Anderson would have had the opportunity to cross examine the debtor, albeit without physically being in the same room. This proceeding is civil, not criminal, and is unlike the state criminal contempt proceeding held on October 29, 2015, where Anderson had appointed counsel and a Sixth Amendment right to confront witnesses.

The October 28, 2015, trial proceeded in Anderson's absence with the debtor testifying from a remote location. The Court admitted plaintiff's Exhibits A through T without objection but asked the debtor to submit additional evidence to document and corroborate certain expenses claimed on plaintiff's Exhibit P. Fed. R. Evid. 1006; Fed. R. Bankr. P. 9017. On November 30, 2015, the debtor filed a supplement to her Exhibit P (Docket No. 108) [hereinafter "debtor's supplement"]. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of the witness. "In doing so, the court considered the witness's demeanor, the substance of the

8

testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of the witness, all exhibits admitted into evidence, and any stipulations.

Although the Court only heard testimony from the debtor and was without the benefit of cross examination, the Court received the debtor's testimony with a healthy dose of skepticism. Unless corroborated by other evidence, the Court did not accept as true many portions of the debtor's testimony, particularly her claims of actual damages and attorney's fees. "As Judge Jerome Frank pithily put it: 'Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those courthouse dramas called trials, he could never render decisions.' " *Liteky v. United States*, 510 U.S. 540, 551 (1994) (quoting *In re J. P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)). Nor, it should be added, has the Court accepted as true, absent corroboration, any factual assertions made in written filings by the defendant Anderson.

Additionally, the Court takes judicial notice of the following cases – which were all initiated by Anderson naming the debtor as a defendant – as well as their

9

dockets:

(1) *Wilfred L. Anderson v. Luann Mitchell*, Cuyahoga C.P. Case No.
CV-11-771259 (filed Dec. 13, 2011), *aff'd* 2014-Ohio-1058, *appeal not accepted*
07/23/2014 Case Announcements, 2014-Ohio-3195 [hereinafter *Case One*];

(2) *Wilfred L. Anderson v. Sommerville Funeral Servs., et al*, Summit C.P.
Case No. CV-2013-08-4139 (filed Aug. 28, 2013) [hereinafter *Case Two*];

(3) *Wilfred L. Anderson v. Luann Mitchell*, Cuyahoga C.P. Case No.
CV-14-820186 (filed Jan. 15, 2014) [hereinafter *Case Three*]; and

(4) *Wilfred L. Anderson v. Cuyahoga Metro. Housing Auth.*, *et al*, Cuyahoga
C.P. Case No. CV-14-820828 (filed Jan. 27, 2014) [hereinafter *Case Four*].

Unless otherwise indicated, the following facts were established at trial by a
preponderance of the evidence.

*Anderson's Claims Against the Debtor*

The debtor provided legal services for a woman named Angelina Johnson
who passed away in approximately 2002. Anderson, who claimed to be Johnson's
surviving spouse, accused the debtor of stealing Johnson's urn and cremated
remains. This dispute came to a head in approximately 2010, when Anderson filed
a complaint against the debtor with the Cleveland Heights Police Department.
Thereafter, Anderson began pursuing a string of cases against the debtor in a

10

number of different courts. The central issue in all of these cases is Anderson's claim that the debtor stole the cremated remains of Johnson. On December 13, 2011, Anderson filed *Case One*. On April 11, 2013, summary judgment was granted in *Case One* in favor of the debtor. The debtor's motion for sanctions was denied, and Anderson was assessed court costs. Anderson filed a notice of appeal on May 10, 2013.

*Mitchell Files Bankruptcy Petition*

The debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 24, 2013. The debtor did not list Anderson as a creditor. Nor did the debtor include *Case One* in her Statement of Financial Affairs, which required her to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." (Docket No. 14 in Case No. 13-14494). Anderson was therefore not included among the creditors who received written notice from the court of the debtor's bankruptcy case, meeting of creditors, and related deadlines and other information. Nevertheless, on August 21, 2013, Anderson referenced the debtor's bankruptcy in a signed motion that he filed in the appeal of *Case One*. Based on this filing, the Court finds by a preponderance of the evidence that Anderson had knowledge of the debtor's bankruptcy filing as of

11

August 21, 2013.

On August 28, 2013, while still pursuing an appeal in *Case One*, Anderson filed *Case Two*. On September 30, 2013, the debtor filed a motion to amend her bankruptcy schedules to include Anderson's claims and list Anderson as a creditor. Without informing the state courts of her bankruptcy petition, the debtor continued to defend both *Case One* and *Case Two* on the merits. On October 2, 2013, the debtor received an order of discharge; however, the bankruptcy court did not send written notice to Anderson. Anderson was apparently not added to the bankruptcy court's creditor mailing matrix until January 7, 2015, when attorney MacDonald filed amended schedules on behalf of the debtor and paid the related $30 filing fee.

*Events Following the Debtor's October 2, 2013, Discharge*

On November 4, 2013, the debtor filed a motion to dismiss *Case Two* for failure to state a claim. This motion was granted on January 10, 2014, and on November 10, 2015, the costs of *Case Two* were billed to Mr. Anderson. While continuing to litigate an appeal in *Case One*, Anderson filed *Case Three* on January 15, 2014. Twelve days later, on January 27, 2014, Anderson filed *Case Four*. The debtor continued to file documents in all three active cases. On March 20, 2014, the Court of Appeals of Ohio, Eight Appellate District, affirmed

12

the grant of summary judgment in favor of the debtor in *Case One*. On

May 2, 2014, Anderson appealed *Case One* to the Ohio Supreme Court, which

declined jurisdiction on July 23, 2014. On January 7, 2015, the debtor, through

attorney MacDonald, added Anderson to her list of creditors and amended her

bankruptcy schedules accordingly. On January 12, 2015, the debtor filed this

adversary proceeding *pro se*. The next day, for the first time in any of the state

court cases filed by Anderson, the debtor filed a notice of bankruptcy in *Case Two*.

On January 15, 2015, *Case Four* was called for trial, the court in that case was

made aware of the debtor's bankruptcy, and Anderson's case against the debtor

was stayed.

*State Court Sanctions*

On March 6, 2015, following a counterclaim by the debtor in *Case Four*,

Judge Peter J. Corrigan declared Anderson to be a vexatious litigator pursuant to

O.R.C. § 2323.52. Specifically, Anderson was barred from:

> doing one or more of the following without first obtaining leave of
> this court to proceed: (1) instituting legal proceedings in the court of
> claims or in a court of common pleas, municipal court, or county
> court; (2) continuing any legal proceedings that the plaintiff had
> instituted in any of the courts listed above prior to the entry of this
> order; and (3) making any application, other than an application for
> leave to proceed.

Additionally, Judge Corrigan granted the debtor summary judgment in *Case Four*

and ordered the debtor to submit an affidavit as to damages. On May 14, 2015, the debtor submitted an amended motion for fees and sanctions related to costs incurred defending against *Case One*, *Case Two*, *Case Three*, and *Case Four*, as well as for compensatory and punitive damages. On June 8, 2015, Judge Corrigan held a hearing and awarded the debtor $1,137.50 in attorney's fees. In the meantime, on March 20, 2015, Judge Daniel Gaul took notice of the vexatious litigator declaration and dismissed *Case Three*. Anderson was assessed court costs in *Case Three* on April 23, 2015. On May 21, 2015, Judge Shannon Gallagher issued a full civil stalking protection order – which remains in effect until May 20, 2020 – against Anderson for the benefit of the debtor.

*Luann Mitchell v. Wilfred Louis Anderson*, Cuyahoga C.P. No. CV-15-844989 (filed May 14, 2015). On June 22, 2015, Anderson filed a complaint with the Richmond Heights Police Department alleging that the debtor falsely accused Anderson of stalking her. In July of 2015, Anderson's complaint was presented to the municipal prosecutor's office for Richmond Heights and the Cuyahoga County Grand Jury, both of which declined prosecution. Finally, on October 29, 2015, Judge Corrigan found Anderson in contempt of the March 6, 2015, vexatious litigator declaration in *Case Four*, remanded Anderson to the county jail, and imposed fines. On November 4, 2015, Anderson, through his attorney, filed a

14

notice of appeal from Judge Corrigan's finding of criminal contempt.

(Case No. CA-15-103732).

## Submitted Damages

The debtor was the only witness who testified at trial. Although the debtor has always appeared *pro se* in this adversary proceeding, she testified that her damages include legal expenses for three attorneys (MacDonald, Littlejohn, and Hemmons), a law student (Kim Bolton), and a law clerk (Cynthia Smith). The debtor testified that she incurred the following expenses: (1) $500 to MacDonald for starting research for the adversary proceeding; (2) $200 to Littlejohn for coordinating the adversary proceeding in its early stages; (3) parking expenses for fifty-two trips at $6 per trip for a total of $312; (4) transportation and court runners for forty-eight trips at $30 per trip; (5) $875 for obtaining certified copies, postage, supplies, and copying; (6) court security for two court appearances – on April 7, 2015, and October 28, 2015 – at $150 per court appearance; and (7) secretarial and office expenses in the amount of $1,980 for Hemmons.

In addition to her testimony at trial, The debtor submitted several documents to support her claimed damages. These documents included Exhibit P, the debtor's supplement, and Exhibit T.

Exhibit P is a three page document titled "Costs and Expenses," the first two

15

pages of which recite, in sum and substance, the facts found above and argue for

punitive damages in the amount of $100,000.  Page three of Exhibit P includes the

following summary of actual damages and costs:

> Legal research and consultation (Kim Bolton (law student);
>     Cynthia Smith (law clerk); James MacDonald, Esq.;
>     Glen Littlejohn, Esq.; Willa Hemmons, Esq.)........ $ 5,200.00
> Parking.......................................................................... $    312.00
> Transportation, Runner (for filing, legal errands, etc.)..... $ 1,800.00
> Certified copies/postage/supplies/copying fees................ $    875.00
> Security (court appearances escort)................................... $    300.00
> Secretarial and office........................................................ $ 1,980.00

At trial, the Court treated this section of Exhibit P as a summary pursuant to

Federal Rule of Evidence 1006 and asked the debtor to submit additional evidence

of expenses in the form of itemized bills or receipts as to:

(1) $1,800 fee for transportation and runners; (2) $875 fee for certified

copies/postage/supplies/copying fees; and (3) $300 fee for court security.  On

November 30, 2015, the debtor filed the debtor's supplement.  The debtor's

supplement itemizes certain expenses for work performed from January 5, 2015,

through October 28, 2015.  The total value of these services is listed on the

debtor's supplement as $12,642.  This total is supported by a copy of a single

parking stub as well as copies of several receipts which account for $129.17 of the

total value.  As to the three categories of expenses that were the subject of the

16

Court's request for additional evidence, the debtor restated each of the three categories as a line item expense without further explanation. Although it is possible that the receipts that were submitted support some of these expenses, this was not made clear to the Court as the debtor did not itemize these expenses in the her supplement and the product descriptions on the receipts are vague (*e.g.* "PPR, 65#, 96B, 25," "Gen Print Serv," "Mini Tape Flag," "Fanta," and "Spine, ½", Bla"). Most likely, these expenses relate to the $875 expense for certified copies/postage/supplies/copying fees.

Additionally, the debtor testified that Exhibit T is a bill for legal fees performed by Hemmons. Exhibit T – which appears to be signed by Hemmons and properly notarized – documents fifty-four hours of work performed on this adversary proceeding from January 3, 2015, through October 27, 2015. Exhibit T lists the price of this work as $4,500, plus a "Secretarial and Office" fee of $1,980 for a total of $6,480. The debtor testified that the $4,500 fee was a flat rate charged by Hemmons for all of her work on this adversary proceeding. However, the debtor testified that Hemmons never entered an appearance in this adversary proceeding, but that Hemmons did represent the debtor in front of Judge Shannon Gallagher for the purpose of obtaining a civil protection order against Anderson.

Even after a careful review of all of the evidence, the Court is not entirely

17

sure which of the above damages are related to which cases. Nor has the debtor

attempted to distinguish between expenses incurred as a result of the stay violation

and expenses incurred as a result of the discharge injunction violation. However,

it appears from the debtor's supplement that all of the above-claimed expenses

were incurred from January 5, 2015, through October 28, 2015. Additionally,

Exhibit T suggests that all of Hemmons's expenses were incurred from

January 3, 2015, through October 27, 2015, for the purpose of this adversary

proceeding (and perhaps, in part, for the debtor to obtain a civil protection order

against Anderson). Based on the above, the Court finds by a preponderance of the

evidence that all of the debtor's submitted legal expenses were incurred to

prosecute this adversary proceeding – as opposed to defending any of the

underlying state court cases – and that these expenses were the following:

(1) $4,500 in legal fees plus $1,980 in secretarial and office expenses to

Willa M. Hemmons, Esq. (Ohio Bar Registration No. 0041790); (2) $129.17 for

certified copies/postage/supplies/copying fees; and (3) $12 for parking.

## CONCLUSIONS OF LAW

The debtor requests that the Court: (1) find that Anderson willfully violated

the automatic stay imposed by 11 U.S.C. § 362(a) by knowingly taking actions to

recover prepetition claims against her; and (2) enter a monetary judgment against

18

Anderson and in favor of the debtor for compensatory damages, punitive damages, costs, and attorney's fees pursuant to 11 U.S.C. § 362(k) as well as for contempt of court.

In her complaint, the debtor did not specifically plead for relief based on a violation of the discharge injunction even though a significant portion of the debtor's complaint references legal actions taken by Anderson after October 2, 2013 – the date of her discharge.  The debtor did request damages for "contempt of court" in her demand for relief.  The Court must construe the debtor's pleadings so as to secure the just, speedy, and inexpensive determination of this proceeding.  Fed. R. Bankr. P. 1001.  Although the debtor did not specifically reference the discharge injunction as such in her complaint, the Court is satisfied that this issue was tried with the parties' express or implied consent, and so the Court will treat this claim as if raised in the pleadings. Fed. R. Civ. P. 15(b)(2); Fed. R. Bankr. P. 7015; *see also Johnston v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (summarily reversing dismissal that had been based on plaintiff's failure to invoke 42 U.S.C. § 1983 in complaint).

The Court will first address the debtor's claim for damages for violation of the automatic stay under 11 U.S.C. § 362(k).  The Court will then address the

debtor's claim that Anderson should be found in contempt for violating the discharge injunction.

## A. Violation of the Automatic Stay

The filing of a bankruptcy petition gives rise to the automatic stay which prohibits:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1). Additionally, the automatic stay bars "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). The stay of any act against the debtor remains in effect until the earliest of the time the case is closed, dismissed, or a discharge is granted or denied. 11 U.S.C. § 362(c)(2). In this case, the automatic stay of any act against the debtor continued only until the debtor received her discharge on October 2, 2013.

A Court can award damages for violations of the automatic stay. Pursuant to subsection 362(k)(1) of Title 11:

> [A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and

20

attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Under 11 U.S.C. § 362(k)(1), the individual seeking damages has the burden of establishing three elements by a preponderance of the evidence: (1) the action taken was in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages. *Collett v. Lee Oil Company, Inc. (In re Collett)*, Nos. 13-8033, 12-61190, 2014 WL 2111309, *4 (B.A.P. 6th Cir. May 21, 2014) (citing *Barclay v. Reimer & Lorber Co. LPA (In re Barclay)*, 337 B.R. 728, 2006 WL 238139, *5 (B.A.P. 6th Cir. Feb. 1, 2006) (table)); *In re Skeen*, 248 B.R. 312, 316-17 (Bankr. E.D. Tenn. 2000).

Although 11 U.S.C. § 362(a)(1) bars the commencement or continuation of a judicial proceeding that was or could have been commenced prepetition, the automatic stay "does not apply in all cases; there are statutory exemptions, and there are non-statutory exceptions." *Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012). To prove that a creditor acted willfully, the debtor must show "that the creditor knew of the automatic stay and that its actions were intentional." *Cousins v. CitiFinancial Mortgage Co. (In re Cousins)*, 404 B.R. 281, 289 n.7 (Bankr. S.D. Ohio 2009) (citing *TranSouth Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687-88 (B.A.P. 6th Cir. 1999)).

21

The debtor caries the "burden to demonstrate, by at least a preponderance of the evidence, that the damages sought were actually suffered." *In re Pawlowicz*, 337 B.R. 640, 645-46 (Bankr. N.D. Ohio 2005).

Even damages that are actually suffered may not be recoverable as "debtors have an obligation to attempt to mitigate damages prior to seeking court intervention." *In re Oksentowicz*, 324 B.R. 628, 630 (Bankr. E.D. Mich. 2005). *See also In re Cousins*, 404 B.R. at 290 n.9; *In re Schang*, No. 14-51178, 2015 WL 3441178, *3 (E.D. Mich. May 28, 2015). The duty to mitigate reflects the sound judicial policy that profit-making from violations of either the automatic stay or discharge injunction is "inherently improper." *Duling v. First Federal Bank of the Midwest (In re Duling)*, 360 B.R. 643, 645-47 (Bankr. N.D. Ohio 2006); *see also* Fed. R. Bankr. Proc. 9011 (prohibiting any action brought for "any improper purpose, such as . . . needless increase in the cost of litigation"). This policy is analogous to the doctrine of avoidable consequences which provides that "the person who stubbornly refuses to protect his own interests is given no legal redress." Restatement (Second) of Torts § 918 cmt. a (1979). *See also* Restatement (Second) of Contracts § 350 (1981). For example, the victim of an intentional tort is "entitled to damages only for the pain, loss of earnings and other elements of damages that [he] would have suffered if he had used reasonable

22

care." Restatement (Second) of Torts § 918 cmt. a, illus. 1 (1979).

### 1. The Debtor Has Established That Anderson Willfully Violated the Automatic Stay

The automatic stay arose in this case on June 24, 2013, the date the debtor filed her bankruptcy petition, and remained in effect as to actions against the debtor until October 2, 2013, the date the debtor received her discharge. At trial, the debtor proved by a preponderance of the evidence that Anderson had knowledge of the debtor's bankruptcy filing as of August 21, 2013. In the time period between August 21, 2013, and October 2, 2013, Anderson filed four documents in his appeal of *Case One*. Additionally, during this time period Anderson filed the complaint in *Case Two* against the debtor and instructed the Clerk of Court for the Summit County Court of Common Pleas to serve the debtor. Both *Case One* and *Case Two* could have been commenced prior to the filing of the debtor's bankruptcy. Therefore, these filings were actions taken in violation of the automatic stay. Additionally, Anderson acted willfully because he knew of the debtor's bankruptcy and intentionally filed these documents in state court.

### 2. Damages for Anderson's Willful Violation of the Automatic Stay

The Court will divide its discussion of damages for willful violation of the automatic stay into four parts: (1) damages stemming directly from Anderson's

23

willful violation; (2) emotional damages; (3) punitive damages; and (4) attorney's

fees, costs, and other expenses in prosecuting this adversary proceeding.

*a. Damages Stemming Directly from Anderson's Willful Violation of the Stay -
August 21, 2013, Through October 2, 2013*

"As the party seeking recovery under § 362(k)," the debtor "had the burden

of requesting damages in a certain amount and of supporting that claim with

evidence." *In re Baer*, No. 11-8062, 2012 WL 2368698, *10 (B.A.P. 6th Cir.

June 22, 2012). The debtor presented little credible evidence of actual damages

stemming directly from Anderson's willful violation of the automatic stay. The

Court believes that any direct damages caused by Anderson's willful violation of

the automatic stay, should be limited to the cost of notifying the state court in each

of the cases filed by Anderson of the debtor's pending bankruptcy case and

resulting automatic stay. Had the debtor done so, the Court is confident that the

state courts would have declined to proceed any further until the bankruptcy stay

was lifted. While the debtor was free to pursue affirmative relief of her own, such

as a legal determination that Anderson was a vexatious litigator under the Ohio

statute, the cost of pursuing such affirmative relief goes beyond what can

reasonably be rewarded for a willful violation of the automatic stay under

11 U.S.C. § 362(k). Any additional damages which the debtor opted to incur were

24

neither reasonable nor necessary.  *See In re Cousins*, 404 B.R. at 290 n.9 ("In order to recover attorney fees as damages, the Debtor will have the burden of proving that the fees are reasonable and necessary.").  *Cf. In re Oksentowicz*, 324 B.R. at 631 (denying relief for alleged violations of 11 U.S.C. § 525(a) where damages were "minimal and likely relate[d] more to the filing of this motion than to the alleged discrimination").

The Court estimates the cost of preparing, filing, and serving notices of bankruptcy in *Case One* and *Case Two* as follows:

roundtrip mileage from debtor's home to
Cuyahoga County Courthouse in downtown Cleveland
28 miles @ $0.565 per mile based on 2013 IRS mileage  = $15.82

roundtrip mileage from debtor's home to
Summit County Courthouse in Akron
74 miles @ $0.565 per mile based on 2013 IRS mileage  = $41.81

parking in Cleveland and Akron                          = $12

postage and copying                                     ≤ $10
--------------------------------------------------------------------------------
approximate total direct damages                        = $80

The debtor could have mentioned her pending bankruptcy in the case before the Ohio Court of Appeals when she filed her "motion by appellee to stay pre-hearing conference" on July 15, 2013, or when she filed her "motion to strike" on August 28, 2013.  Similarly, she could have mentioned her pending bankruptcy

25

case and her chapter 7 discharge when she filed her appellee's brief in the Ohio Court of Appeals on November 12, 2013, or when she filed her motion to dismiss and to declare Anderson a vexatious litigator in the Summit County Court of Common Pleas on November 4, 2013. Rather, the debtor chose to defend these matters without apprising the state courts of her pending bankruptcy case or her chapter 7 discharge.

In addition, Judge Corrigan already awarded the debtor $1,137.50 in attorney's fees as a sanction for Anderson's prosecution of *Case One*, *Case Two*, *Case Three*, and *Case Four* in connection with the vexatious litigator declaration. Although costs and attorney's fees are regularly awarded as actual damages from violations of stay, the debtor is not entitled to a double recovery, and the state court award covers the same conduct. Given the state court order awarding the debtor $1,137.50, the Court finds that the debtor already has a larger judgment against Anderson for the same conduct than this Court would award for willful violation of the automatic stay under 11 U.S.C. § 362(k). Accordingly, the Court declines to award any direct damages to the debtor beyond the larger, existing state court judgment.

### b. Emotional Damages

At the outset, the Court notes that there is some controversy as to whether

emotional damages can be recovered under § 362(k). *Compare Cousins*,

404 B.R. at 290 ("[T]here is some question as to whether emotional damages are

compensable under § 362(k)."), *and United States v. Harchar*, 331 B.R. 720, 728

(N.D. Ohio 2005) (noting circuit split but holding that emotional damages are not

compensable for violations of the automatic stay), *with Bankers Healthcare Grp.,*

*Inc. v. Bilfield (In re Bilfield)*, 494 B.R. 292, 302-03 (Bankr. N.D. Ohio 2013)

(noting circuit split but opining in dicta that "emotional distress damages are

actual damages that can be recovered for a stay violation"). *See also Lodge v.*

*Kondaur Capital Corp.*, 750 F.3d 1263, 1269-71 (11th Cir. 2014) (discussing split

among circuit courts and concluding that emotional distress damages are

compensable under § 362(k)). However, this split of authority is irrelevant for the

purposes of this proceeding. Even if emotional damages can be recovered for

violations of the automatic stay, the debtor presented insufficient testimonial or

documentary evidence that as a result of Anderson's violation of the automatic

stay she suffered anything other than "fleeting and inconsequential distress."

*Cousins*, 404 B.R. at 290-91 (citing *Pawlowicz*, 337 B.R. at 646-47 and *Skeen*,

248 B.R. at 318-19).

### c. Punitive Damages

"A party injured by a willful violation of the stay may also recover punitive

damages in appropriate circumstances." *Bilfield*, 494 B.R. at 304. Punitive

damages are appropriate only when a creditor acts egregiously, vindictively, or

with intentional malice. *Id.* (quoting *In re Baer*, No. 11-8062, 2012 WL 2368698,

*10 (B.A.P. 6th Cir. June 22, 2012)). An award of punitive damages is within the

bankruptcy court's discretion where actual damages are an insufficient deterrent to

further violations. *Archer v. Macomb County Bank*, 853 F.2d 497, 500 (6th Cir.

1988). Such an award is inappropriate in this proceeding for several reasons.

First, while Anderson may well have acted vindictively, the Court believes that

Ohio's statutory protection against vexatious litigators is a better means for

addressing the conduct at issue here. Ohio's vexatious litigator status already

provides a sufficient deterrent as evidenced by the criminal contempt proceedings

brought against Anderson in state court. Moreover, the federal courts, given their

limited jurisdiction, have adequate procedures for policing their own dockets. *See*

*Anderson v. Mitchell*, No. 1:14 CV 276, 2014 WL 3749316, *1 (N.D. Ohio

July 29, 2014) (district court dismissed Anderson's *pro se* lawsuit against the

debtor *sua sponte* before the debtor was even required to respond). Also, without

in any way condoning Anderson's conduct, the Court notes that the debtor

affirmatively chose to defend the state court cases without apprising the state

courts of her pending bankruptcy case. Finally, it appears that Anderson's

28

peculiar conduct in pursuing vexatious litigation against the debtor may be more an end in itself – *i.e.*, to vex or harass the debtor – rather than a means to obtain a money judgment or to coerce a payment from the debtor. Therefore, the Court declines to award punitive damages.

### d. Attorney's Fees, Costs, and Other Expenses in Prosecuting this Adversary Proceeding

Section 362(k) authorizes an award of all attorney's fees reasonably incurred to remedy a stay violation, including fees incurred in prosecuting the damages action that § 362(k) authorizes. *In re Schwartz-Tallard*, 803 F.3d 1095 (9th Cir. 2015) (en banc); *In re Repine*, 536 F.3d 512, 522 (5th Cir.2008); *In re Duby*, 451 B.R. 664, 674-77 (B.A.P. 1st Cir. 2011). The Court has reviewed the debtor's testimony as well as all of the documentation submitted by the debtor in support of her claim for attorney's fees, costs, and other expenses in prosecuting this adversary proceeding. For a number of reasons, the Court declines to award the debtor any damages under 11 U.S.C. § 362(k) except $72 in costs. The Court will divide its discussion according to the same categories used by the debtor.

### Legal Research and Consulting

The Court declines to award any fees for legal work in the debtor's *pro se* prosecution of this adversary proceeding for several reasons. First, attorneys who

29

represent a debtor in a bankruptcy case or in connection with such a case must timely file with the court a statement of the compensation paid or agreed to be paid for services rendered or to be rendered. *See* 11 U.S.C. § 329(a); Fed. R. Bankr. P. 2016(b). If the representation does not occur until later in the debtor's bankruptcy case, Rule 2016(b) requires that a supplemental statement be filed and transmitted to the United States trustee within fourteen days after any payment or agreement not previously disclosed. Failure to timely file such a disclosure may be grounds for disapproving or requiring disgorgement of any attorney's fees. *See Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001)). *See also Vergos v. Mendes & Gonzales PLLC (In re McCrary & Dunlap Const. Co., LLC)*, 79 F. App'x 770, 779-80 (6th Cir. 2003) (a range of remedies, including disgorgement, is available to a bankruptcy court confronted with a rule violation). In a situation like this adversary proceeding, where no attorney has entered an appearance on behalf of the debtor, it is particularly appropriate to insist upon timely disclosure of fee agreements to avoid "ghostwriting" situations. *See In re Dreamplay, Inc.*, 534 B.R. 106, 120 (Bankr. D. Md. 2015) (quoting *In re Mungo*, 305 B.R. 762, 767 (Bankr. D. S.C. 2003)) (defining "ghostwriting" and noting that attorneys who engage in the practice "may be subject to sanctions, suspension or disbarment"). *See also In re Merriam*,

30

250 B.R. 724, 736 (Bankr. D. Colo. 2003) (noting that Rule 2016 disclosure must specify limitations in the scope of representation). Moreover, had attorney MacDonald or another competent bankruptcy attorney prosecuted this adversary proceeding on behalf of the debtor, the matter would presumably have been handled much more efficiently and effectively. *See Kay v. Ehrler*, 499 U.S. 432, 438 (1991) (holding that a *pro se* attorney is not entitled to attorney's fees under 42 U.S.C. § 1988 and noting that "statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.").

*Parking*

The debtor seeks $312 for parking expenses, for fifty-two trips at $6 per trip, but has only submitted one receipt for the October 28, 2015, trial. There is no documentation for the other fifty-one days. To the extent that these purported parking expenses occurred before the debtor's discharge on October, 2, 2013, they are subsumed by the state court award of $1,137.50. Absent contemporaneous records or other documentation or corroboration, the Court will not accept the debtor's claim of fifty-two parking charges as valid. The Court will accept a total of $12 for parking: (1) to attend the initial pretrial in this adversary proceeding on April 7, 2015, and (2) to attend the trial in this adversary proceeding on

31

October 28, 2015.

*Transportation/Runner*

The debtor seeks $1,800 for transportation/runner services, but provided no receipts, even after the Court gave the debtor an additional thirty days after the trial to submit them. Absent receipts or other evidence to corroborate this alleged expense, the Court disallows this claimed expense.

*Secretarial and Office*

The debtor seeks $1,980 for secretarial expenses, which were purportedly provided as part of the legal services by attorney Hemmons. *See* Exhibit T. The Court disallows this expense for the same reason that it disallowed the legal work performed by attorney Hemmons. The Court will not permit an attorney or law firm to bill for secretarial services when the same attorney or law firm fails to timely disclose to the court the services it agrees to provide the debtor.

*Security*

The debtor seeks $300 for security to escort the debtor to the courthouse for the initial pretrial on April 7, 2015, and for the trial on October 28, 2015, but provided no receipts or other corroborating documentation, even after being given additional time. The Court disallows this purported expense.

32

*Certified copies/postage/supplies/copying fees*

The debtor seeks $875 for "certified copies/postage/supplies/copying fees."
Although Rule 7054 generally leaves the award of costs to the discretion of the
court, a court has no discretion "when a statute of the United States or these rules
otherwise provides."  Fed. R. Bankr. P. 7054(b).  The Court understands that one
such exception is 11 U.S.C. § 362(k)(1) ("an individual ... shall recover actual
damages, including costs and attorneys' fees").  Therefore, to the extent that the
debtor has documented reasonable costs incurred in the prosecution of an action
under section 362(k), those costs will be allowed.

While the debtor prepared and submitted exhibit books that included
certified copies of state court filings, the debtor provided no receipts from the state
court clerk's office.  The debtor did include receipts from OfficeDepot/OfficeMax
totaling $129.17, presumably for copying charges, binders, and tabs.  Included in
that figure is an $0.86 receipt for a "Fanta" which appears to be for a soda and will
be disallowed, leaving a balance of $128.31.  Although the debtor has no receipts
for certified copies, the Court takes judicial notice of the fact that the Cuyahoga
County Common Pleas Court charges one dollar plus five cents per page for
certified copies.  Given the certified copies of eleven exhibits – Exhibits B, C, D,
G, H, I, J, K, L, M, and N – totaling 119 pages, the resulting charge for certified

33

copies would be $16.95. The court finds that the debtor incurred costs of $145.26 for "certified copies/postage/supplies/copying fees." However, of the eleven exhibits for which the debtor submitted certified copies, only Exhibit D relates to the violation of the automatic stay. The ten other exhibits are court documents from after the debtor's discharge on October 2, 2013, and are only relevant to the alleged violation of the discharge injunction. Exhibit D is a nine page document accounting for $1.45 in certified copying costs. Since the vast majority of the debtor's exhibits pertain to Anderson's violation of the discharge injunction, as opposed to the automatic stay, the Court finds it appropriate to allocate $60 of the documented costs for certification and copying to the debtor's claim under section 362(k). Therefore the Court will award $60 for the cost of "certified copies/postage/supplies/copying fees" related to Anderson's violation of the automatic stay.

*Summary of Damages for Willful Violation of the Automatic Stay*

To recap, the Court would have awarded the debtor $80 in direct damages, which reflects the approximate cost of notifying the state courts of the debtor's pending bankruptcy case and resulting automatic stay. This amount, however, is subsumed by the state court order already awarding the debtor over $1,100 for the same conduct giving rise to Anderson's willful violation of the automatic stay.

34

Therefore, the Court awards no direct damages. Nor is the debtor entitled to emotional damages or punitive damages. As for any attorney's fees, costs, and other expenses in prosecuting this adversary proceeding, the Court finds that the debtor is not entitled to any attorney's fees, as no attorney admitted to practice in the U.S. District Court for the Northern District of Ohio ever entered an appearance in this proceeding or timely filed a fee disclosure statement. The debtor is, however, entitled to $72 for copying, certified copies, and parking.

### B. Contempt of the Discharge Injunction

11 U.S.C. § 524 provides in pertinent part:

> (a) A discharge in a case under this title –
> . . . .
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

A debtor may bring an action in civil contempt if a party violates the discharge injunction of section 524. *See Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-23 (6th Cir. 2000); *Lover v. Rossman & Co. (In re Lover)*, 337 B.R. 633 (Bankr. N.D. Ohio 2005).

> In order to support a motion for civil contempt, a plaintiff has the burden of establishing by clear and convincing evidence that [the defendant] violated a definite and specific order of the court requiring [the defendant] to perform or refrain from performing a particular act

35

or acts with knowledge of the court's order. . . . There is no
requirement to show intent beyond knowledge of the order.

*CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir.

2015) (internal citations and quotation marks omitted); *In re Stewart*,

499 B.R. 557, 573 (Bankr. E.D. Mich. 2013) (quoting *Glover v. Johnson*,

138 F.3d 229, 244 (6th Cir. 1998)). *But see SEC v. First Choice Mgt. Servs., Inc.*,

678 F.3d 538, 544-45 (7th Cir. 2012) (Posner, J.) (citing *Grogan v. Garner*,

498 U.S. 279, 286 (1991), and other cases) (suggesting in dicta that the large body

of case law requiring clear and convincing evidence to prove civil contempt "is in

tension with the Supreme Court's insistence on a presumption in favor of the less

onerous standard of preponderance of the evidence in federal civil cases").

   "If contempt is established, the injured party may be able to recover

damages as a sanction for the contempt." *In re Caravona*, 347 B.R. 259, 267

(Bankr. N.D. Ohio 2006) (citing *Chambers v. Greenpoint Credit (In re*

*Chambers)*, 324 B.R. 326, 329 (Bankr. N.D. Ohio 2005)). Additionally, the Court

may award "attorney fees to an debtor injured by a contemptible violation of the

discharge injunction." *In re Chambers*, 324 B.R. at 329-30 (discussing *Miller v.*

*Chateau Communities, Inc. (In re Miller)*, 282 F.3d 874 (6th Cir. 2002)).

Generally, damages in contempt proceedings are meant to vindicate the affront to

36

a court order, and not compensate private harm, but "[t]he modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction, and, where necessary to effectuate the purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees." *Lassiter v. Moser (In re Moser)*, Nos. 09-8067, 09-8068, 2010 WL 4721239, *5 (B.A.P. 6th Cir. Nov. 23, 2010) (quoting *Miles v. Clarke (In re Miles)*, 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006)). However, as with damages for violations of the automatic stay, debtors have a duty to mitigate damages when faced with violations of the discharge injunction, and the debtor must establish that any attorney fees are reasonable. Not only does Bankruptcy Rule 9011 prohibit actions brought for "any improper purpose, such as . . . to cause unnecessary delay or needless increase in the cost of litigation[,]" but it is inherently improper for debtors "to view violations [of the discharge injunction] as a profit-making endeavor." *Duling*, 360 B.R. at 645-47 (discussing reasonableness of attorney fees and debtor's duty to mitigate damages for violations of the discharge injunction). An award of damages for a violation of the discharge injunction is within the Court's discretion. *In re Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003).

*1. Debtor Failed to Establish That Anderson Had Specific Knowledge of the Debtor's Bankruptcy Discharge*

Although copies of state court records establish that Anderson had knowledge of the debtor's bankruptcy filing as of August 21, 2013, the record is much less clear as to when Anderson had knowledge of the debtor's October 2, 2013, bankruptcy discharge. For example, the bankruptcy court's docket reflects that the bankruptcy court did not send written notice of the debtor's discharge to Anderson. (Docket No. 44 in Case No. 13-14494). Anderson was apparently not added to the bankruptcy court's creditor mailing matrix until January 7, 2015, when attorney MacDonald filed amended schedules on behalf of the debtor and paid the related $30 filing fee. Similarly, a letter the debtor sent to Anderson on November 14, 2013, more than a month after she received her bankruptcy discharge, fails to mention the discharge. Rather it asserts, inaccurately, that his continued actions are in violation of the automatic stay. *See* Exhibit F. Certainly, the debtor's letter and Anderson's conceded knowledge of the pending bankruptcy case would, at a minimum, require Anderson to make further inquiry before continuing his actions to litigate prepetition claims against the debtor in state court. Nevertheless, the debtor has the burden of showing that Anderson had knowledge of the discharge injunction by clear and convincing

38

evidence. *CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d at 598.

Therefore, the Court finds that the debtor has failed to establish by clear and convincing evidence that Anderson acted in civil contempt of the discharge injunction when he continued to pursue prepetition claims in *Case One*, *Case Two*, *Case Three*, and *Case Four* after October 2, 2013.

> *2. Even If the Debtor Properly Established That Anderson Acted in Contempt of the Discharge Order, the Court Would Not Award the Debtor Any Damages, Attorney's Fees, or Costs for Anderson's Violation of the Discharge Injunction*

To the extent that a reviewing court were to find that the debtor has properly established that Anderson acted in civil contempt of the discharge injunction, the Court will address the issue of damages or remedy for such civil contempt.

As explained below, the Court would not award the debtor any further damages or attorney's fees for violation of the discharge injunction, even if the debtor has properly established that Anderson acted in civil contempt of the discharge injunction. First, rather than immediately raise the defense of her bankruptcy discharge in the state courts, the debtor continued to defend these cases for over a year before filing this adversary proceeding on January 12, 2015. While not condoning Anderson's vexatious conduct in pursuit of these prepetition claims, the Court notes that the debtor had ample opportunity to limit her damages

39

by timely asserting the protection of the discharge injunction in state court. *See Duling*, 360 B.R. at 645-47.

Second, to the extent that the debtor may have incurred some minimal costs in apprising the state courts of her discharge and getting those claims dismissed, the debtor has already been reasonably compensated by Judge Corrigan's award of attorney fees. Moreover, the protection afforded the debtor under Ohio's vexatious litigator statute is in many ways broader and a better fit than that afforded her under the discharge injunction. For example, the bankruptcy discharge affords no protection against claims that Anderson makes arising out of postpetition conduct – *i.e.*, after June 24, 2013. Thus, when Anderson apparently sought criminal charges against the debtor in July of 2015, allegedly in retaliation for the debtor filing false police reports against him in March of 2015, that postpetition action would be unaffected by the debtor's discharge.

The Court is satisfied that the purposes of the discharge injunction are fully effected by the state court declaration that Anderson is a vexatious litigator. Nor has the state court judge who declared Anderson to be a vexatious litigator shied away from enforcing that order, including the imposition of significant fines and even incarceration. As for the alleged attorney's fees and costs that the debtor claims to have incurred to pursue Anderson's violation of the discharge injunction,

40

the Court would reject them for the same reasons that it rejected all of the attorney's fees and most of the costs sought in connection with Anderson's willful violation of the automatic stay.

Nor does the Court believe that punitive damages are appropriate in a civil contempt proceeding for violation of a discharge injunction. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916-17 (7th Cir. 2001). An award of punitive damages for contempt of a discharge injunction sounds in the nature of criminal contempt and therefore lies beyond the authority of a bankruptcy judge. *See, e.g., Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, (9th Cir. 2003) (bankruptcy court may not impose punitive sanctions pursuant to § 105(a) contempt authority); *Griffth v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503, 1521 (5th Cir. 1990) (bankruptcy courts have no inherent or statutory power to preside over criminal contempt trials); *Holley v. Oliver (In re Holley)*, 473 B.R. 212, 216 (Bankr. E.D. Mich. 2012) (collecting cases). Nor does the evidence in this proceeding rise to the point that would warrant this Court referring the matter to a district court judge for purposes of criminal contempt. As noted earlier, while Anderson's actions are certainly deplorable, Ohio's vexatious litigator statute is a better fit for remedying Anderson's vexatious conduct and harassment of the debtor. For example, the discharge injunction would not apply to claims that arose after the debtor filed for

41

bankruptcy on June 24, 2013.  And Anderson is already the subject of a criminal contempt finding for pursuing claims in violation of the order determining Anderson to be a vexatious litigator. Anderson is also the subject of a state court protection order in favor of the debtor until May 20, 2020.  Additional deterrent and punitive measures for actions that may also happen to violate the debtor's discharge injunction would be duplicative.

*Summary of Claim Based on Violation of the Discharge Injunction*

To recap, the Court finds that the debtor has failed to establish by clear and convincing evidence that Anderson acted in civil contempt of the discharge injunction when he continued to pursue prepetition claims.  Moreover, even if the debtor properly established that Anderson acted in civil contempt of the discharge injunction, the Court would not award the debtor any further damages or attorney's fees beyond the $1,137.50 already awarded the debtor in state court for the same conduct.

Finally, to the extent that Anderson may have asserted affirmative defenses or counterclaims, the Court finds that Anderson failed to carry his burden of production.

CONCLUSION

For the reasons stated above, the Court finds that Anderson willfully

42

violated the automatic stay but did not knowingly violate the discharge injunction. The Court declines to award damages beyond the $1,137.50 already awarded the debtor in state court for the same conduct, other than $72 in costs for copying, certified copies, and parking incurred in the prosecution of the automatic stay portion of this adversary proceeding.

IT IS SO ORDERED.